IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARBITRON INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. _____ |
| v. ) | |
| ) | |
| WKYC-TV, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Arbitron Inc. ("Arbitron"), by and through its undersigned attorneys, as and for its Complaint against Defendant WKYC-TV, Inc. ("WKYC-TV" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.  Arbitron has been one of the nation's leading firms in the field of audience measurement for more than 50 years. This case arises from WKYC-TV's unauthorized reproduction and distribution of Arbitron's copyrighted audience estimates, and its false designation of non-Arbitron audience estimates as the genuine work product of Arbitron using Arbitron's federally registered trademarks, creating confusion in the marketplace as to the source and quality of those estimates and irreparably harming Arbitron in the process. This Complaint sets forth Arbitron's claims against WKYC-TV for copyright infringement under the Copyright Act, 17 U.S.C. 101, *et seq.*; trademark infringement, false designation of origin and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*

## THE PARTIES

2.  Arbitron is a Delaware corporation with its principal place of business located at 9705 Patuxent Woods Drive, Columbia, Maryland, 21046.

3. Upon information and belief, Defendant WKYC-TV is a Delaware corporation with its principal place of business located at 1333 Lakeside Avenue, Cleveland, Ohio 44114. WKYC-TV is a broadcast television station in the Cleveland, Ohio television market. Upon information and belief, WKYC-TV is wholly owned and controlled by Gannett Co., Inc., which holds the FCC broadcast license for the station.

4. WKYC-TV has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, as its agent for service of process.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the First Claim for Relief under the Copyright Act, 17 U.S.C. § 101, *et seq.*, pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over the Second and Third Claims for Relief under the Lanham Act, 15 U.S.C. § 1051, et seq., pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

6. Upon information and belief, WKYC-TV is subject to this Court's jurisdiction because it is a Delaware corporation.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is a resident of this District.

## BACKGROUND

8. Arbitron is an international media and marketing research firm serving the media—radio, television, cable and out-of-home—the mobile industry, and advertising agencies and advertisers around the world. Arbitron's businesses include: measuring network and local market radio audiences across the United States; surveying the retail, media and product patterns of U.S. consumers; providing mobile audience measurement and analytics in the United States,

Europe, Asia and Australia; and developing application software used for analyzing media audience and marketing information data.

9. For more than 50 years, Arbitron has been a leader in its field and is particularly well-known for its radio audience estimates. Arbitron collects radio audience listening data by various means including though paper diaries filled out by survey participants and through Arbitron's Personal Portable Meter, or PPM, an electronic device that records codes embedded within broadcasts from which Arbitron can determine what a survey participant is listening to and when. From this survey information, Arbitron produces audience estimates and station rankings which it publishes in periodic reports (the "Arbitron Reports") and creates databases comprising these estimates, reports and other works (the "Databases").

10. The Arbitron Reports and Databases and the audience estimates contained in each of the Arbitron Reports and Databases are, and have been at all times material to this action, original works of authorship uniquely created by Arbitron's own skill, expertise, opinion, labor and judgment. Arbitron is the owner of registered copyrights in the Arbitron Reports and Databases and the audience estimates contained therein. At least the following registrations are relevant to this action:

| Title | Number | Effective Date |
|---|---|---|
| Cleveland January 2011 PPM Arbitron Inc. Radio Market Report | TX 7-330-920 | February 28, 2011 |
| Cleveland February 2011 PPM Arbitron Inc. Radio Market Report | TX 7-342-032 | April 1, 2011 |
| Cleveland March 2011 PPM Arbitron Inc. Radio Market Report | TX 7-344-153 | April 25, 2011 |

| | | |
|---|---|---|
| Cleveland April 2011 PPM Arbitron Inc. Radio Market Report | TX 7-356-533 | May 19, 2011 |
| Cleveland May 2011 PPM Arbitron Inc. Radio Market Report | TX 7-371-787 | June 17, 2011 |
| Cleveland June 2011 PPM Arbitron Inc. Radio Market Report | TX 7-384-404 | July 14, 2011 |
| Cleveland July 2011 PPM Arbitron Inc. Radio Market Report | TX 7-401-854 | August 10, 2011 |

Certificates of Registration for the above listed works are attached as Exhibit 1.

11.    Arbitron Reports and Databases are licensed to subscribers pursuant to the terms of written agreements. The subscribers are granted limited licenses to use Arbitron Reports and Databases and the audience estimates contained therein which remain at all times the sole and exclusive property of Arbitron.

12.    Pursuant to the such agreements, Arbitron has granted limited licenses to numerous broadcasters, advertisers and advertising firms in the Cleveland, Ohio radio market to receive and use the Arbitron Reports and Databases in exchange for license fees to be paid as provided in the written agreements. Arbitron also typically licenses the Arbitron Reports and Databases to consultants, third-party processors and sales representatives in the radio industry. Defendant is not an Arbitron subscriber and, as such, is not authorized to receive, use, copy or distribute the Arbitron Reports and Databases or the Arbitron audience estimates contained therein.

13. Arbitron is the owner of the trademarks "ARBITRON," "ARBITRON PPM," and "PPM" in the United States (the "Arbitron Marks") and has been granted the following registrations in the United States Patent and Trademark Office:

| Mark | Registration No. | Original Date of Issue |
|---|---|---|
| ARBITRON | 1,023,753 | October 28, 1975 |
| ARBITRON PPM | 3,583,706 | March 3, 2009 |
| PPM | 4,074,012 | December 20, 2011 |
|  | 4,124,546 | April 10, 2012 |
|  | 4,134,324 | May 1, 2012 |

Each of these registrations is currently valid, subsisting and in full force and effect and is registered on the Principal Trademark Register of the United States Patent and Trademark Office. Copies of the Certificates of Registration referenced above are attached hereto as Exhibit 2.

14. The Arbitron Marks are in full force and effect. Arbitron has never abandoned the Arbitron Marks, nor has Arbitron ever abandoned the goodwill of Arbitron's business in connection with the Arbitron Marks. Arbitron intends to continue to preserve and maintain its rights with respect to the Arbitron Marks.

15. The Arbitron Marks have been extensively and continually used, advertised, and promoted by Arbitron in connection with Arbitron's products and services, including the Arbitron Reports and Databases, within the United States since their creation. Arbitron has expended substantial amounts of time, effort, and money over the years to ensure that the purchasing public associates the Arbitron Marks exclusively with Arbitron.

16. As a result of the time, effort and money invested in its business, and the quality of its goods and services, Arbitron has achieved a reputation for excellence and enjoys and fulfills a substantial demand for its products and services.

17. By virtue of the extensive scope of sales to consumers, unsolicited press coverage relating to Arbitron, and the substantial sums spent to advertise and promote products and services under the Arbitron Marks, the marks have acquired a strong secondary meaning in the minds of the purchasing public, and are now highly distinctive and famous, and serve uniquely to identify Arbitron's products and services, including the Arbitron Reports and Databases. Through widespread and favorable public acceptance and recognition, the Arbitron Marks enjoy tremendous goodwill and have become assets of incalculable value as symbols of Arbitron's products and services.

## DEFENDANT'S WRONGFUL ACTS

18. WKYC-TV has willfully and intentionally infringed Arbitron's copyrights by copying and distributing copyrighted audience estimates obtained from the Arbitron Reports and Databases without authorization from Arbitron. Moreover, WKYC-TV has infringed Arbitron's trademarks by willfully and intentionally using the Arbitron Marks in its promotional activities. WKYC has falsely represented that certain audience estimates were produced by Arbitron when, in fact, those audience estimates were not produced by Arbitron, causing confusion in the minds of the public.

19. Arbitron obtained a copy of a media kit–a collection of promotional materials and PowerPoint slides used in sales presentations–distributed by WKYC-TV entitled "Bringing Local Internet Radio Advertising to Cleveland!" (hereinafter, the "Media Kit"), a copy of which is annexed as Exhibit 3. Upon information and belief, the Media Kit is part of an effort by WKYC-TV to sell advertising time on its station together with time on Pandora ("Pandora"), an Internet radio service.

20. Defendant WKYC-TV has not at any relevant time been a licensee of the Arbitron Reports and Databases.

21. The Media Kit contains reproductions of Arbitron's audience estimates and station ratings included in the Arbitron Reports and Databases. Specifically, a page entitled "Pandora In Cleveland – Demo Comparison" reproduces a list of Arbitron's average quarter hour ("AQH") audience estimates for nine radio stations the Cleveland market covering the period from January to July 2011, on Mondays to Fridays from 6 am to 7 pm for Adults age 18-49. At the bottom of the page is a statement that reads, "Source: Edison/Arbitron research M-F 6a-7p Adults 18-49 Cleveland 7BK Jan11-Jul11 MSA ARB PPM." This reference is to the Arbitron Reports from which the list was copied.

22. That page also contains a table that depicts what purports to be the "AQH Rating" and "Cume Rating" for Pandora Internet radio in Cleveland among two demographics, Adults 35-64 years old and Adults 25-54 years old. In light of the "Source" statement on the same page identifying Arbitron and the "ARB PPM" as the source of the estimates, members of the public viewing these estimates are likely to mistakenly believe that the AQH and Cume Ratings for Pandora were produced by Arbitron, particularly since "AQH" and "Cume" are two audience estimate metrics commonly employed by Arbitron. In fact, these audience estimates pertaining to Pandora were not created or endorsed by Arbitron in any way, nor did Arbitron have any input into their creation.

23. Upon information and belief, beginning in or about March 2012, WKYC-TV sales representatives and account executives showed and distributed this presentation to numerous potential advertisers. In all, at least 42 copies of the Media Kit were distributed to potential advertisers and other members of the public by WKYC-TV and/or its agents.

**FIRST CLAIM FOR RELIEF**
(Copyright Infringement – 17 U.S.C. § 501)

24. Arbitron repeats the allegations contained in paragraphs 1 through 23 above as if fully set forth at length herein.

25. Defendant is not licensed or authorized to reproduce or distribute copies of the Arbitron Reports and Databases or any of the copyrighted audience estimates contained in the Arbitron Reports and Databases.

26. Upon information and belief, beginning in or about March 2012, Defendant reproduced and distributed a Media Kit containing Arbitron's copyrighted radio audience estimates for nine radio stations to at least 42 advertisers, potential advertisers and other members of the public.

27. By virtue of the aforesaid acts, including but not limited to reproducing and distributing materials containing the copyrighted estimates contained in Arbitron's Reports and Databases, Defendant has infringed Arbitron's copyrights in the Arbitron Reports and Databases in violation of 17 U.S.C. § 501.

28. Upon information and belief, Defendant's acts have been and continue to be willful and deliberate violations of Arbitron's rights.

29. Upon information and belief, Defendant has wrongfully profited from its unlawful acts and will continue to do so if not enjoined. Arbitron has no adequate remedy at law to prevent this irreparable harm.

30. By reason of the foregoing, Arbitron is entitled to a permanent injunction enjoining and restraining Defendant from using or distributing Arbitron's copyrighted works under 17 U.S.C. § 502.

31. In addition, pursuant to 17 U.S.C. §§ 504 and 505, as a result of Defendant's intentional and willful copyright infringement, for each of the aforesaid instances of copyright infringement, Arbitron is entitled to an award of statutory damages in an amount to be determined at trial, but in no event less than $150,000 per incident together with interest thereon as well as its reasonable attorneys' fees and costs

## SECOND CLAIM FOR RELIEF
(Trademark Infringement – 15 U.S.C. §1114(1))

32. Arbitron repeats the allegations contained in paragraphs 1 through 31 above as if fully set forth at length herein.

33. Arbitron is owner of United States trademark registrations for the Arbitron Marks.

34. Pursuant to Section 15 of the Trademark Act of 1946, as amended (15 U.S.C. § 1056), Arbitron's right to use the registered trademark "ARBITRON" is incontestable.

35. Defendant's actions as described above, including but not limited to its representation in the Media Kit that Arbitron is a source of the AQH and Cume ratings for Pandora, are likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection or association of Defendant with Arbitron, or as to the origin, sponsorship, or approval by Arbitron of the AQH and Cume ratings for Pandora.  Defendant's actions thus constitute infringement of the federally-registered Arbitron Marks in violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

36. As a direct and proximate result of the acts of Defendant as alleged herein, Arbitron has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Defendant profits at Arbitron's expense.  Arbitron is therefore entitled to recover all profits realized by Defendant and all damages sustained by Arbitron as a result of Defendant's infringement, and the costs of this action under 15 U.S.C. § 1117(a).

37. Upon information and belief, the actions of Defendant described above have at all times relevant to this action been willful and/or knowing. Arbitron is therefore entitled to an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a).

38. Arbitron has no adequate remedy at law for Defendant's infringement of the Arbitron Marks. Unless Defendant is permanently enjoined from infringing the Arbitron Marks, Arbitron will continue to suffer irreparable harm.

### THIRD CLAIM FOR RELIEF
(False Designation of Origin – 15 U.S.C. §1125(a))

39. Arbitron repeats the allegations contained in paragraphs 1 through 38 above as if fully set forth at length herein.

40. The Arbitron Marks, as used in commerce in connection with audience estimates and related services, are distinctive marks and have become exclusively associated with Arbitron through Arbitron's continuous, extensive and widespread use of the marks in advertising, promotion, marketing and sale of its products and services over many years. The "ARBITRON" mark has been used continually in commerce since 1958, the "PPM" mark since 2002 and the "ARBITRON PPM" mark since 2006. As a result, the Arbitron Marks exclusively identify Arbitron's business and products.

41. Defendant's actions as described above, including but not limited to its representation in the Media Kit that Arbitron is a source of the AQH and Cume ratings for Pandora, are likely to cause confusion, or to cause mistake, or to deceive the consuming public as to the affiliation, connection or association of Defendant with Arbitron, or as to the origin, sponsorship, or approval by Arbitron of the AQH and Cume ratings for Pandora. Defendant's actions thus constitute false designation of origin in violation of section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

42. As a direct and proximate result of the acts of Defendant as alleged herein, Arbitron has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Defendant profits at Arbitron's expense. Arbitron is therefore entitled to recover all profits realized by Defendant and all damages sustained by Arbitron as a result of Defendant's infringement, and the costs of this action under 15 U.S.C. § 1117(a).

43. Upon information and belief, the actions of Defendant described above have at all times relevant to this action been willful and/or knowing. Arbitron is therefore entitled to an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a).

44. Arbitron has no adequate remedy at law for Defendant's infringement of the Arbitron Marks. Unless Defendant is permanently enjoined, Arbitron will continue to suffer irreparable harm.

**WHEREFORE,** Arbitron demands judgment against Defendant as follows:

(a) on Arbitron's first claim for relief, an award of damages in an amount not less than $150,000 per act of infringement plus an award of reasonable attorneys' fees and costs, plus an award of enhanced damages;

(b) on Arbitron's second and third claims for relief, a permanent injunction enjoining Defendant, its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them:

    i. From using the Arbitron Marks and any variations thereof in any manner, form, or medium likely to confuse consumers into mistakenly believing that Defendant, Defendant's businesses, or the businesses of any third parties are authorized or sponsored by, or affiliated with, Arbitron;

      ii.    Using any reproduction, counterfeit, copy or colorable imitation of the Arbitron Marks to identify any goods or services not authorized by Arbitron;

      iii.    Using any false description or representation including words or other symbols tending falsely to describe or represent Defendant's or third parties' unauthorized goods or services as being those of Arbitron, or sponsored by or associated with Arbitron, and from offering such goods or services into commerce; and

      iv.    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that goods or services products manufactured, distributed or sold by Defendant or any third parties are in any manner associated with or connected with Arbitron, or are sold, licensed, sponsored, approved or authorized by Arbitron;

(c)    on Arbitron's second and third claims for relief, an award of all profits realized by Defendant and all damages sustained by Arbitron as a result of Defendant's infringement of the Arbitron Marks, and the costs of this action under 15 U.S.C. § 1117(a);

(d)    on Arbitron's second and third claims for relief, an award of enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a); and

(e)    awarding Arbitron its costs and fees incurred in bringing this suit together with such other and further relief as this Court deems just and proper.

-13-

                          Respectfully submitted,

                          POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Peter Lambrianakos
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700

Dated: January 25, 2013
1091601 / 39881

By: */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Plaintiff Arbitron Inc.*